### IN THE U.S. DISTRICT COURT FOR THE
### MIDDLEDISTRICT OF GEORGIA

| | |
|---|---|
| JENNIFER JOHNSON-CAMPBELL, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF CATHY ANN WINDHAM JOHNSON, DECEASED, AND JESSICA TAGNEY, INDIVIDUALLY | PLAINTIFFS |
| v. | 1:19-cv-00209-LAG |
| WORKHORSE TRUCKS, INC. (WORKHORSE GROUP, INC.), WORKHORSE MOTOR WORKS, INC., NAVISTAR, INC., AND WORKHORSE CUSTOM CHASSIS, LLC, | |
| | DEFENDANTS |

### AMENDED COMPLAINT WITH JURY TRIAL DEMANDED

Plaintiffs, Jennifer Johnson-Campbell, Individually, and as Administrator for the Estate of Cathy Ann Windham Johnson, deceased, and Jessica Tagney, Individually, by counsel, for their Amended Complaint against the Defendants, Workhorse Trucks, Inc. (Workhorse Group, Inc.), Workhorse Motor Works, Inc., Navistar, Inc., and Workhorse Custom Chassis, LLC, state as follows:

### THE PARTIES

1. Plaintiff, Jennifer Johnson-Campbell, is a citizen of the State of Georgia, residing in Richmond Hill, Bryan County, Georgia.

2. Plaintiff, Jessica Tagney, is a citizen of the State of Flordida, residing in Chipley, Washington County, Florida.

3. Plaintiffs' mother, Cathy Ann Windham Johnson (the "Decedent") was at all relevant times a citizen and resident of Albany, Dougherty County, Georgia.

4. Decedent died on October 19, 2017, in Albany, Dougherty County, Georgia.

5. Jennifer Johnson-Campbell was appointed Administrator of Decedent's estate on December 4, 2017, and has standing to bring this lawsuit. A copy of the Order appointing her as Administrator of Decedent's estate is attached as Exhibit 1.

6. Plaintiffs are of the age of majority and are the only children of Decedent, who was unmarried at the time of her death.

7. At all relevant times, Decedent was employed as a delivery driver for United Parcel Service ("UPS").

8. At all relevant times, Defendant, Workhorse Trucks, Inc. (Workhorse Group, Inc.) (hereinafter "Workhorse Group"), is a Nevada corporation, with its principal place of business located at 100 Commerce Drive, Loveland, Ohio 45140.

9. Defendant Workhorse Group may be served with process on its registered agent, Vcorp Agent Services, Inc., 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

10. At all relevant times, Defendant, Workhorse Motor Works, Inc. (hereinafter "Workhorse Motor"), is an Indiana corporation and a wholly-owned subsidiary of Workhorse Group, with its principal place of business located at 100 Commerce Drive, Loveland, Ohio 45140.

11. Defendant Workhorse Motor may be served with process via the Georgia Secretary of State on its registered agent, VCorp Services, LLC, 150 W. Market Street, Suite 800, Indianapolis, IN 46204.

12. At all relevant times, Defendant, Navistar, Inc. (hereinafter "Navistar"), is a Delaware corporation, with its principal place of business located at 2701 Navistar Drive, Lisle, IL 60532.

13. Defendant Navistar may be served with process on its registered agent, Corporation Service Company, Technology Parkway South, Suite 300, Norcross, GA 30092.

14. At all relevant times, Defendant, Workhorse Custom Chassis, LLC. (hereinafter "Workhorse Custom"), was an Illinois corporation and a wholly-owned subsidiary of Navistar, with its principal place of business located at 2701 Navistar Drive, Lisle, IL 60532.

15. Defendant Workhorse Custom may be served with process its registered agent, Corporation Service Company, Technology Parkway South, Suite 300, Norcross, GA 30092.

16. According to Defendant Workhorse Group, Defendant Workhorse Custom sold its business to Defendant Workhorse Motor on March 4, 2013. *See* Doc. 7-1 par. 7.

17. According to Defendant Workhorse Group, Defendant Workhorse Custom retained responsibility for any defective products created before that date. *See* Doc. 7-1 par. 8.  Due to the decision by the AMP entities to rebrand themselves as "Workhorse" entities, Plaintiffs reasonably believed that Workhorse Group and Workhorse Custom were jointly controlled and operated.

18. Indeed, Workhorse Group has held itself our as a mere continuation of the Workhorse brand.

19. Despite their reasonable diligence, Plaintiffs were unaware until the filing of Workhorse Group's motion on December 6, 2019, that Workhorse Group may have not fully continued the operations of Workhorse Custom.

20. Despite their reasonable diligence, Plaintiffs were unaware until the filing of Workhorse Group's motion on December 6, 2019, that Workhorse Group and Workhorse Motor would deny responsibility for Workhorse Custom products.

21. In fact, despite their reasonable diligence, Plaintiffs remain unaware of the nature of liabilities contractually retained by Navistar and Workhorse Custom and contractually obtained by Workhorse Group and Workhorse Motor.

22. At all relevant times, Defendants were engaged in the business of designing,

engineering, manufacturing, assembling, inspecting, testing, advertising, marketing, distributing, and/or selling a variety of delivery box trucks and vans[1], including the 2010 Workhorse W42 box truck, VIN Number 5B4KFD2D2A3441181 (the "Subject Workhorse W42"), which is distributed and sold to various delivery courier companies, including UPS, throughout the United States.

23. Upon information and belief and at all relevant times, Decedent's employer, UPS, was the legal owner of the subject Workhorse W42.

24. Upon information and belief and at all relevant times, the subject Workhorse W42 was used to conduct business and for the benefit of Decedent's employer, UPS.

25. The incident giving rise to this lawsuit arises from a motor vehicle collision that occurred on or about October 19, 2017.

## JURISDICTION AND VENUE

26. The amount in controversy exceeds the minimum amount necessary to establish the jurisdiction of this Court.

27. This Court has subject matter jurisdiction pursuant to O.C.G.A § 15-6-8 and the Georgia State Constitution.

28. This Court is authorized to exercise personal jurisdiction over Defendants pursuant to the Georgia Long-Arm Statute, O.C.G.A § 9-10-91, because the causes of action stated herein arise out of Defendants:

    a. Transacting any business within the State of Georgia;

    b. Committing a tortious act or omission with the State of Georgia; or,

    c. Committing a tortious injury in the State of Georgia caused by an act or omission outside the State of Georgia where Defendants regularly do or solicit business, or engaged in any other persistent course of conduct, or derivers substantial revenue from goods used or consumed, or services rendered in the State of Georgia.

---

[1] https://workhorse.com/company.html

29. This Court is authorized to exercise personal jurisdiction over Defendants because Defendants are or were at all relevant times engaged in such regular, continuous, and systematic business in the State of Georgia that Defendants may fairly be regarded as "at home" in Georgia.

30. Defendants Navistar and Workhorse Custom targeted Georgia in the following ways:

   a. Navistar is registered to do business in Georgia.

   b. Upon information and belief, Navistar and Workhorse Custom jointly marketed their trucks as compliant with the laws of all 50 states, including Georgia. Upon information and belief, Navistar continues to do so.

   c. Navistar and Workhorse Custom jointly intentionally targeted Georgia through fleet sales to Georgia-based UPS.

   d. Upon information and belief, Navistar and Workhorse Custom jointly communicated with UPS employees, officers, and agents in Georgia to negotiate truck sales.

   e. Upon information and belief, UPS paid Navistar and Workhorse Custom from Georgia for trucks.

   f. Upon information and belief, Navistar and Workhorse Custom jointly delivered the trucks in Georgia to UPS.

   g. Upon information and belief, Navistar and Workhorse Custom jointly warranted and serviced UPS trucks in Georgia.

   h. Upon information and belief, Navistar and Workhorse Custom jointly marketed their trucks to UPS as compliant with the laws of Georgia.

   i. Navistar and Workhorse Custom jointly used Uptime, Inc. (a Navistar subsidiary) to distribute trucks and truck parts and to service trucks in

Georgia. Navistar continues to do so.

j. Navistar maintains a physical parts location in Georgia at 1300 Oakley Industrial Boulevard, Fairburn, GA 30213.

31. Defendant Workhorse Group and Workhorse Motor have targeted Georgia in the following ways:

a. Workhorse Group and Workhorse Motor have jointly continued to operate Workhorse Custom's business with Workhorse Custom's clients like Georgia-based UPS.

b. Workhorse Group (formerly AMP Holdings Inc.) and Workhorse Motor (formerly AMP Trucks Inc.) assumed the Workhorse brand name in order to continue Workhorse Custom's business.

c. Workhorse Group and Workhorse Motor jointly hold themselves out to consumers as a continuation of Workhorse Custom's business.

d. Consumers rely upon Workhorse Group's representation.

e. Upon information and belief, Workhorse Group and Workhorse Motor jointly continued to manufacture the defective W42 trucks after purchasing Workhorse Custom.

f. Upon information and belief, Workhorse Group and Workhorse Motor jointly market their trucks as compliant with the laws of all 50 states, including Georgia.

g. Workhorse Group and Workhorse Motor jointly intentionally target Georgia through fleet sales to Georgia-based UPS.

h. Upon information and belief, Workhorse Group and Workhorse Motor jointly communicate with UPS employees, officers, and agents in Georgia

6

to negotiate truck sales.

    i. Upon information and belief, UPS pays Workhorse Group and Workhorse Motor from Georgia for trucks.

    j. Upon information and belief, Workhorse Group and Workhorse Motor jointly deliver the trucks in Georgia to UPS.

    k. Upon information and belief, Workhorse Group and Workhorse Motor jointly warrant and service UPS trucks in Georgia.

    l. Upon information and belief, Workhorse Group and Workhorse Motor jointly market their trucks to UPS as compliant with the laws of Georgia.

    m. Workhorse Group and Workhorse Motor jointly use Ryder to distribute trucks and truck parts and to service trucks in Georgia.

    n. Ryder has numerous locations in Georgia and is registered to do business in Georgia.

    o. Workhorse Group and Workhorse Motor jointly previously used Uptime to distribute trucks and truck parts and to service trucks.

    p. Upon information and belief, Workhorse Group and Workhorse Motor jointly used Uptime to distribute trucks and truck parts and to service trucks in Georgia.

32. Venue is proper in this Court because the tortious acts, omissions, and/or injuries that form the basis of this lawsuit occurred in Albany, Dougherty County, Georgia.

## FACTS

33. The Subject Workhorse W42 forms the basis of this Complaint.

34. On October 19, 2017, Decedent was operating the subject Workhorse W42, and traveling westbound on Liberty Expressway in Albany, Dougherty County, Georgia.

7

35. Decedent was, at the time, driving the subject Workhorse W42 on behalf of and/or under the dispatch of her employer, UPS.

36. At the same time, traffic ahead of Decedent was coming to a stop. Decedent attempted to brake and slow down to traffic, but could not do so in time and crashed into the rear end of a dump truck ahead of her.

37. The front of the subject Workhorse W42 struck the rear end of the dump truck, causing the Subject Workhorse W42's chassis and frame to submarine beneath the dump truck bed, buckle and deform in a dangerous and unsafe manner and subject Decedent to significantly more crash-related forces and crushing than if the Subject Workhorse W42 been designed, manufactured, constructed, equipped, and/or tested in a reasonable and/or safe, non-defective manner.

38. As a result of Defendants' strict liability and negligence, as more fully described below, Decedent sustained and suffered significant damages, including serious bodily injuries resulting in her death.

### COUNT I – STRICT LIABILITY

39. Plaintiffs adopt and reiterate each and every allegation above, as if set out fully in this paragraph.

40. Defendants are in the business of designing, assembling, testing, manufacturing, inspecting, distributing, importing, selling, and/or supplying a wide array of delivery trucks and vans, including the Subject Workhorse W42.

41. Defendants designed, assembled, distributed, imported, marketed, sold, and/or ultimately placed the Subject Workhorse W42 directly into the stream of commerce.

42. Defendants knew or reasonably foresaw that individuals like Decedent would use and operate the Subject Workhorse W42.

43. Defendants had a legal duty to design, inspect, test, manufacture, and assemble the Subject Workhorse W42 so that it would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

44. Among other things, the Subject Workhorse W42 is not crashworthy, is defective, and is unreasonably dangerous and unsafe for foreseeable users and occupants in each of the following particulars:

   a. Having a chassis, frame, and body that are inadequately designed, constructed, and located, which causes occupants to be significantly closer to the area of impact and subject them to significantly higher crash forces in foreseeable rear-end collisions;

   b. Having a chassis, frame, and body that allows the Subject Workhorse W42 to submarine, or under-ride, other vehicles that may be struck from behind by the Subject Workhorse W42 in foreseeable collisions, subjecting occupants to significantly higher crash forces;

   c. Failing to adequately warn Decedent, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to Defendants, so that individuals like Decedent could make informed and prudent decisions regarding traveling or riding in such vehicles.

45. The Subject Workhorse W42's design defects, whether individually or collectively, rendered the Subject Workhorse W42 unreasonably dangerous for its intended and foreseeable use.

46. The Subject Workhorse W42 left Defendant's possession and control with the design defect(s) that Plaintiffs allege, and the Subject Workhorse W42 remained defective and unreasonably dangerous up until and throughout the events giving rise to Decedent's injuries, death, and damages.

47. The Subject Workhorse W42's design defects, whether individually or collectively, actually and proximately caused Decedent's injuries, death, and damages and Plaintiffs' damages.

## COUNT II – NEGLIGENCE

48. Plaintiffs adopt and reiterate each and every allegation above, as if set out fully in this paragraph.

49. Defendants negligently designed, assembled, distributed, imported, marketed, sold, and/or ultimately placed the Subject Workhorse W42 directly into the stream of commerce.

50. Defendants knew or reasonably foresaw that individuals like Decedent would use the Subject Workhorse W42.

51. Defendants owed a duty of reasonable care to people who use the Subject Workhorse W42, including Decedent, to design and warn about the Subject Workhorse W42 in such a way that did not render the Subject Workhorse W42 defective and unreasonably dangerous, as set forth above.

52. Defendants owed a duty of reasonable care to people who use the Subject Workhorse W42, including Decedent, to design and warn about the Subject Workhorse W42's defects, as set forth above.

53. Defendants owed a duty of reasonable care to people who use the Subject Workhorse W42, including Decedent, to not make inaccurate and/or misleading statements and/or to manufacture Subject Workhorse W42 in such a way that the Subject Workhorse W42 would perform as designed, including by manufacturing the Subject Workhorse W42 in such as so that the Subject Workhorse W42 would prevent injuries, death, and damages such as those sustained by Decedent.

54. Defendants breached the duties it owed to Decedent by inadequately designing and/or warning about the Subject Workhorse W42, as set forth above.

55. At no time did Defendants take action to remedy the Subject Workhorse W42's defective and unreasonably dangerous condition or to adequately warn consumers or users about its negligent design of the subject Workhorse W42, despite Defendants' knowledge of the subject Workhorse W42's defective condition and ability to warn.

56. Defendants' negligence actually and proximately caused Decedent's injuries, death, and damages, and Plaintiffs' damages.

## COUNT III – PUNITIVE DAMAGES

57. Plaintiffs adopt and reiterate each and every allegation above, as if set out fully in this paragraph.

58. Defendant acted recklessly, wantonly, and/or with extreme indifference or reckless disregard for the consequences of their actions, as well as exhibited a reckless disregard for the life, safety, and health of others, including Decedent, warranting the imposition of punitive damages.

59. Plaintiffs, pursuant to O.C.G.A. § 51-12-5.1, are entitled to an award of punitive damages to deter Defendants, and others similarly situated, from such conduct in the future.

## DAMAGES

60. All preceding statements and allegations of Plaintiffs' Complaint are incorporated herein and realleged as if expressly set forth herein.

61. Jennifer Johnson-Campbell and Jessica Tagney, the natural born children of Cathy Ann Windham-Johnson, deceased, have standing to recover for the wrongful death of Cathy Ann Windham-Johnson.

62. Jennifer Johnson-Campbell, as Administrator of the Estate of Cathy Ann Windham-Johnson, has standing to recover the general damages and special damages of Cathy Ann Windham-Johnson.

63. As a direct and proximate result of the negligence and misconduct of Defendant, as well as the defective, unsafe, and unreasonably dangerous Subject Workhorse W42, Cathy Ann Windham-Johnson was killed, and Plaintiffs are entitled to recover from the Defendants the full value of the life of Cathy Ann Windham-Johnson.

64. As a direct and proximate result of the negligence and misconduct of Defendants, as well as the defective, unsafe, and unreasonably dangerous Subject Workhorse W42, Cathy Ann Windham-Johnson experienced physical pain and suffering.

65. As a direct and proximate result of the negligence and misconduct of Defendants, as well as the defective, unsafe, and unreasonably dangerous Subject Workhorse W42, Cathy Ann Windham-Johnson experienced mental pain and suffering, including shock, fright, and terror.

66. As a direct and proximate result of the negligence and misconduct of Defendants, as well as the defective, unsafe, and unreasonably dangerous Subject Workhorse W42, Cathy Ann Windham-Johnson's Estate incurred funeral expenses.

**WHEREFORE**, the Plaintiffs, Jennifer Johnson-Campbell, Individually, and as Administrator for the Estate of Cathy Ann Windham Johnson, deceased, and Jessica Tagney,

Individually, pray for the following relief against the Defendants, Workhorse Trucks, Inc. (Workhorse Group, Inc.), Workhorse Motor Works, Inc., Navistar, Inc., and Workhorse Custom Chassis, LLC:

    A. That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiff's Complaint;

    B. That service be had upon Defendants as provided by law;

    C. That the Court award and enter a judgment in favor of Plaintiffs and against Defendants for damages in an amount to be proven at trial;

    D. That Plaintiffs have a trial by a jury as to all issues; and,

    E. That Plaintiffs have such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of January, 2020:

*/s/ Dylan J. Hooper*
DYLAN J. HOOPER
Morgan & Morgan Atlanta, PLLC
191 Peachtree Street, N.E., Suite 4200
P.O. Box 57007
Atlanta, GA 30343-1007
(404) 965-8811 – Telephone
(859) 899-8108 – Facsimile
dhooper@forthepeople.com
*Counsel for Plaintiffs*