IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JENNIFER JOHNSON-CAMPBELL, Individually and as Administrator of the Estate of Cathy Ann Windham Johnson, deceased, *et al.*, | : : : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 1:19-CV-209 (LAG) |
| WORKHORSE GROUP INC., | : : : |
| Defendant. | : : |

## ORDER

Before the Court are Defendant's Motion To Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2) or in the Alternative Under Fed. R. Civ. P 12(b)(6) or for More Definite Statement Under Fed. R. Civ. P. 12(e) and Incorporated Memorandum in Support (Doc. 7) and Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 11). For the reasons set forth below, Defendant's Motion is **GRANTED**, and Plaintiffs' Motion is **GRANTED in part and DENIED in part**.

## PROCEDURAL BACKGROUND

On October 15, 2019, Plaintiffs Jennifer Johnson-Campbell, individually and as Administrator for the Estate of Cathy Ann Windham Johnson (deceased), and Jessica Tagney, individually, initiated this action against Defendant Workhorse Group, Inc. in the Superior Court of Dougherty County, Georgia. (Doc. 1 ¶ 1.) Plaintiffs' claims arise from an automobile collision in which Plaintiffs' mother Cathy Ann Windham Johnson's truck collided with the rear of a dump truck, resulting in her death. (*See id.* at 14–28.) Defendant removed the action to this Court on November 15, 2019. (*Id.*) On December 5, 2019, Defendant filed the instant Motion to Dismiss, seeking to alternatively dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), or

require Plaintiffs to file a more definite statement under Rule 12(e). (Doc. 7 at 1.) Plaintiffs responded on December 26, 2019, and Defendant replied on January 10, 2019. (Docs. 10, 16.)

On January 3, 2020, Plaintiffs moved for leave to file an amended complaint, seeking to add jurisdictional allegations against Defendant and Navistar, Inc., Workhorse Custom Chassis, LLC, and Workhorse Motor Works, Inc. as defendants. (Doc. 11.) Upon the Parties' request, the Court stayed discovery pending resolution of the instant Motions. (Doc. 14.) Defendant timely responded to Plaintiffs' motion to amend on February 10, 2019. (Doc. 17.) Plaintiffs did not file a Reply Brief. (*See* Docket.) Accordingly, the Motions are ripe for review. M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARDS

### I.  Federal Rule of Civil Procedure 12(b)(2)

In resolving a motion to dismiss for lack of personal jurisdiction, the Court analyzes Plaintiffs' claims using a three-step burden shifting process. First, a "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). At this stage, the Court "accept[s] as true the allegations in the complaint." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If the plaintiff alleges sufficient facts, the defendant may "challenge[ ] jurisdiction by submitting affidavit evidence" showing that jurisdiction is lacking. *Id.* Second, if "the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction . . . ." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). "The burden, however, does not shift back to the plaintiff when the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (internal quotation marks omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *Meier*, 288 F.3d at 1269). "If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the

burden-shifting process, and the motion should be granted." *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 2020 WL 4743465, at *4 (11th Cir. Aug. 17, 2020) (per curiam).

## II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. While a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," it is not required "to accept the labels and legal conclusions in the complaint as true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). At bottom, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards*, 602 F.3d at 1291 (punctuation omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79.

## III. Federal Rule of Civil Procedure 15(a)

Pursuant to Rule 15(a), "[a] party may amend its pleading once as matter of course" within certain timeframes. In all other cases, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, may deny a motion to amend the pleadings where there is "[u]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Claims are futile when they will "fail as a matter of law" or are "subject to dismissal."

*Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010); *Burger King v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). "[T]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is used to determine futility." *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1355 (N.D. Ga. 2016) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996)), *aff'd*, 692 F. App'x 986 (11th Cir. 2017). Rule 15 nevertheless "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (11th Cir. 1981). Accordingly, absent a "substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King*, 169 F.3d at 1319 (quoting *Dussouy*, 660 F.2d at 598). "The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it . . . ." *In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014). Because the time for amending as a matter of course has lapsed, Plaintiffs seek leave of Court to amend.

## MOTION TO DISMISS

**I.   Facts**

Cathy Ann Windham Johnson was a United Parcel Service (UPS) delivery driver. (Doc. 1 at 15 ¶ 7.) On October 19, 2017, Johnson was travelling westbound on Liberty Expressway in Albany, Georgia in her delivery truck when traffic came to a halt. (*Id.* at 17 ¶¶ 20–22.) Johnson tried to brake but was unable to do so fast enough, causing her truck to collide with a dump truck's rear end. (*Id.* at 17 ¶ 22.) As a result of the collision, Johnson's truck's chassis and frame buckled, deformed, and submarined under the dump truck bed. (*Id.* at 17 ¶ 23.) Johnson sustained serious bodily injuries, which ultimately resulted in her death. (*Id.* at 17 ¶ 24.)

Plaintiffs allege that Johnson was driving a 2010 Workhorse W42 (W42) box truck at the time of the collision. (*Id.* at 15 ¶ 10.) According to Plaintiffs, Defendant Workhorse Group, Inc., a Nevada corporation with its principle place of business in Loveland, Ohio, designed, engineered, manufactured, assembled, inspected, tested, advertised, marketed, distributed, and sold the subject truck to UPS. (*Id.* at 2 ¶ 2, 15 ¶¶ 8, 10.) As such, Plaintiffs alleged that Defendant had a legal duty to properly design, inspect, test, manufacture, and assemble the W42 to ensure it would be "reasonably crashworthy and provide a reasonable

4

degree of occupant safety" during foreseeable highway collisions. (*Id.* at 18 ¶ 29.) Plaintiffs allege that Defendant failed this duty, as the W42 is "unreasonably dangerous and unsafe for foreseeable users and occupants . . . ." (*Id.* at 18 ¶ 30.) In particular, Plaintiffs allege the W42 chassis, frame, and body's inadequate design, construction, and location cause occupants to be significantly closer to the impact zone in rear-end collisions and result in significantly higher crash forces. (*Id.*) Plaintiffs finally allege that Defendant negligently designed, assembled, distributed, imported, marketed, sold, and placed the W42 into the stream of commerce. (*Id.* at 19 ¶ 35.)

In support of its Motion to Dismiss, Defendant submitted the declaration of its Chief Operating Officer Robert Willison, PhD. (Doc. 7-1.) In his declaration, Willison states Defendant is a Nevada corporation with its principal place of business in Loveland, Ohio and a manufacturing facility in Union City, Indiana. (*Id.* ¶ 2.) It does not have any offices, facilities, property, or presence in Georgia and has never been licensed, authorized, or registered to do business in Georgia. (*Id.* ¶ 3.) Likewise, Defendant does not have any employees or agents working in Georgia, except for its Chief Financial Officer who previously maintained a residence in the state and commuted to work in Ohio. (*Id.*)

According to Willison, Defendant did not manufacture the subject W42. (*Id.* ¶ 4.) Rather, the subject W42 was built by Workhorse Custom Chassis, LLC. (WCC)—a subsidiary of Navistar Inc.—in 2010 in Union City, Indiana. (*Id.* ¶ 5.) To the best of Willison's knowledge, WCC delivered the subject truck to UPS. (*Id.*) As of 2012, WCC ceased manufacturing vehicles altogether and closed its plant in Union City. (*Id.* ¶ 6.) On March 4, 2013, AMP Trucks Inc.—now known as Workhorse Motor Works, Inc.—a subsidiary of Defendant, purchased WCC's assets via an Asset Purchase Agreement. (*Id.* ¶ 7.) Under the Asset Purchase Agreement, AMP Trucks purchased WCC's Union City manufacturing facility and intellectual property, including the Workhorse trademarks. (*Id.* ¶ 9.) AMP Trucks, however, did not agree to assume WCC's liabilities, except those arising thereafter from the "Farmer's Lease"[1] and certain dealer agreements. (*Id.* ¶ 8.) Neither

---

[1] The Asset Purchase Agreement defines the "Farmer's Lease" as the cash lease between WCC, as landlord, and Joshua J. Hanes, as tenant, dated January 8, 2012, as amended by that First Amendment to Cash Lease, dated November 14, 2012. (Doc. 7-1 at 11.)

5

related to the manufacture of the W42. (*Id.*)

Willison asserts that Defendant does not and has never produced the W42 and the Defendant manufactures electric, medium duty trucks, not diesel trucks like the W42. (*Id.* ¶ 10.) Willison further states that Defendant did not start manufacturing chassis until mid-2016 and only manufactures fully electric vehicles and hybrid chassis. (*Id.* ¶ 10(g)–(h).) All of Defendant's trucks are manufactured and delivered in Indiana, and Defendant does not sell, distribute, or deliver any products in Georgia. (*Id.* ¶ 11.)

## II.   Discussion

Defendant first argues that Plaintiffs' Complaint should be dismissed because the Court lacks personal jurisdiction over Defendant. (Doc. 7 at 5.) "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Mazer*, 556 F.3d at 1274. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). The Georgia Supreme Court has held that the state's long-arm statute is not coextensive with procedural due process. *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 620 S.E.2d 352, 353 (Ga. 2005). Accordingly, the Court must interpret the statute "literally," as it "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal*, 593 F.3d at 1259.

Plaintiffs assert the Court has jurisdiction over Defendant pursuant to subsections one through four of Georgia's long-arm statute. Georgia's long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

6

> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (4) Owns, uses, or possesses any real property situated within this state;
>
> . . . .

O.C.G.A. § 9-10-91(1)–(4). For the Court to properly exercise personal jurisdiction over Defendant, Plaintiffs must set forth sufficient facts "to find that at least one prong of the long-arm statute is satisfied." *Diamond Crystal*, 593 F.3d at 1260 (citing *Rudo v. Stubbs*, 472 S.E.2d 515, 516 (Ga. Ct. App. 1996)).

### A. Plaintiffs Have Not Established That Defendant Transacts Business in Georgia

Under subsection one, a defendant transacts any business within this state where it "has purposefully done some act or consummated some transaction in Georgia." *Id.* (alteration omitted) (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)). "'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'" *Id.* at 1265 n.18. To transact business, a "defendant need not physically enter the state." *Id.* at 1264. The Court therefore may consider the defendant's "tangible and intangible conduct," even if "occurring while the defendant is physically outside of Georgia," asking "whether it can fairly be said that the [defendant] has transacted any business within Georgia." *Id.*

Here, Plaintiffs fail to allege sufficient facts showing that Defendant transacts any business in Georgia. In their Complaint, Plaintiffs allege that Defendant, a Nevada corporation with its principle place of business in Ohio, sold and distributed the W42 to various delivery courier companies, including UPS, throughout the United State thereby placing it into the general "stream of commerce." (Doc. 1 at 15 ¶¶ 8, 10, 27.) Plaintiffs, however, do not allege that Defendant designed, manufactured, assembled, or directly sold

the W42 within Georgia or that it sold the W42 to UPS with the knowledge that it would enter the Georgia stream of commerce. While Plaintiffs allege that Defendant is engaged in such regular, continuous, and systematic business in Georgia that Defendant may fairly be regarded as "at home" there, they do not specify or describe any of these purported transactions. (Doc. 1 at 16 ¶ 17.) This conclusory allegation, without more, is insufficient to state a prima facie case of personal jurisdiction. Thus, Plaintiffs do not allege sufficiently that Defendant took any action—tangible or intangible—to purposefully transact any business in Georgia.

Plaintiffs also argue that the Court can exercise personal jurisdiction over Defendant under subsection one because Defendant should have foreseen that putting the W42 into the "stream of commerce" might subject it to jurisdiction all over the country, including Georgia. (*See* Doc. 10 at 7–8.) For support, Plaintiffs rely on *Vibratech, Inc. v. Frost*, 661 S.E.2d 185 (Ga. Ct. App. 2008). In *Vibratech*, the Georgia Court of Appeals found that personal jurisdiction under subsection one could be premised upon a stream of commerce analysis. 661 S.E.2d at 189. In that case, following an airplane crash in Tennessee, the estates of the deceased plane passengers and the Georgia Cumberland Conference of Seventh-Day Adventists, who owned the subject plane, sued Vibratech, Inc. for negligently manufacturing a viscous damper used in the plane's engine. *Id.* at 187. Vibratech, a Delaware corporation with its principal place of business in New York, sold the damper in New York to Teledyne Continental Motors, Inc., a Delaware corporation with its principal place of business in Alabama, who subsequently installed the damper in a rebuilt plane engine. *Id.* The Georgia Cumberland Conference of Seventh-Day Adventists purchased the rebuilt engine from Teledyne Continental Motors, Inc. through a third-party Texas company, and Teledyne Continental Motors, Inc. shipped the engine to a fourth-party vendor in Georgia, who installed the engine in the subject plane. *Id.* Relying on the Georgia Supreme Court's decision in *Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, 620 S.E.2d 352 (Ga. 2005), the Georgia Court of Appeals held that because Vibratech "shipped its products to [Teledyne Continental Motors, Inc.,] with the expectation that it would be installed in [plane] engines for re-sale to other locales across the country, including Georgia,"

it had sufficiently created minimum contacts necessary for Georgia court's to exercise personal jurisdiction over it. *Id.* at 190.

Critically, however, since that decision, the Eleventh Circuit has construed the Georgia Supreme Court's decision in *Innovative Clinical* to foreclose the type of due-process analysis set forth in *Vibratech*. *See Diamond Crystal*, 593 F.3d at 1260 n.11. The Eleventh Circuit has explained that the Georgia Court of Appeals analysis under subsection one continues to "collapse the long-arm test into the 'minimum contacts' due process analysis" and "is inconsistent with the independent and literal long-arm inquiry mandated by the Georgia Supreme Court in *Innovative Clinical*." *Id.*; *see also Thiele Kaolin Co., LLC. v. BNSF Ry. Co.*, 2011 WL 693093, at \*5 (M.D. Ga. Feb. 18, 2011) (interpreting *Diamond Crystal* as foreclosing the one-step due process analysis used in *Vibratech*). Because the Court is bound by the Eleventh Circuit's interpretation of *Innovative Clinical*, the court's decision in *Vibratech* is inapplicable here. *See Thiele Kaolin*, 2011 WL 693093, at \*5; *see also Jenkins v. NaturMed, Inc.*, 2018 WL 8949451, at \*4 (N.D. Ga. July 25, 2018) (noting the apparent conflict between *Vibratech* and *Diamond Crystal* and relying on the latter). Accordingly, the Court cannot exercise personal jurisdiction over Defendant under subsection one.

### B. Plaintiffs Have Not Established That Defendant Committed a Tortious Act or Omission in Georgia, Regularly Does or Solicits Business in Georgia, or Owns, Uses, or Possesses any Real Property in Georgia

Plaintiffs also fail to allege any facts to permit jurisdiction under subsections two through four. Subsection two is inapplicable because Plaintiffs do not allege that Defendant committed any tortious act or omission within Georgia. *See* O.C.G.A. § 9-10-91(2). While the collision occurred in Georgia, there is no allegation that it was the result of any act by Defendant within Georgia. Rather, Defendant's allegedly tortious conduct concerns its design, manufacture, and sale of the subject truck, none of which occurred in Georgia. Subsection three likewise is inapplicable. Plaintiffs allege that Defendant's out-of-state conduct resulted in a tortious injury in Georgia but do not allege sufficient facts to show that Defendant regularly does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods or services rendered in Georgia. *See id.* § 9-10-91(3). Moreover, as noted above, Plaintiffs' conclusory allegation that "Defendant is engaged in

such regular, continuous, and systematic business" in Georgia is, without more, insufficient to establish jurisdiction under subsection three. Finally, subsection four is inapplicable because Plaintiffs do not allege that Defendant "[o]wns, uses, or possesses any real property" in Georgia. O.C.G.A. § 9-10-91(4).

Because Plaintiffs fail to allege sufficient facts setting forth a prima facie case of jurisdiction under Georgia's long-arm statute, they have failed to carry their burden, and the Court does not consider whether jurisdiction would violate the Fourteenth Amendment's Due Process Clause or Defendant's alternative arguments. *Diulus*, 2020 WL 4743465, at *4 (affirming dismissal of plaintiff's complaint that failed to set forth a prima facie case of jurisdiction under Georgia's long-arm statute). Accordingly, Defendant's Motion to Dismiss is **GRANTED**.

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Plaintiffs seek leave to file an amended complaint to add jurisdictional facts regarding Defendant's contacts with Georgia and to add Navistar, Inc., WCC, and WMW as defendants in this action. (Doc. 11 at 1.) Defendant does not object to the addition of Navistar or WCC. (*See* Doc. 17.) It argues, however, that Plaintiffs' proposed Amended Complaint again fails to set forth a basis for the Court to exercise personal jurisdiction over it or WMW, that Plaintiffs' proposed claims against WMW are futile because they are time-barred, and alternatively that Plaintiffs' proposed Amended Complaint is an impermissible "shotgun complaint." (*Id.* at 1–2.)

### I. Navistar and WCC

Before addressing Defendant's arguments, the Court first must determine whether Plaintiffs may amend their Complaint to add Navistar and WCC as defendants. As noted above, the time for amending as a matter of course has lapsed; therefore, Plaintiffs must seek leave of Court to amend their Complaint. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."— the Court should freely give a plaintiff leave to amend. *Foman*, 371 U.S. at 182. Additionally, Rule 20(b) permits a plaintiff to permissively join a nonparty as a defendant where: "(A) any

10

right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

There are no apparent or declared reasons to deny Plaintiffs' leave to amend to add Navistar and WCC. In the proposed Amended Complaint, Plaintiffs assert claims for strict liability, negligence, and punitive damages against all Defendants jointly and severally, arising out of the design, manufacture, and sale of the W42. There also are common questions of law and fact pertaining to all Defendants, such as liability for the negligent design of the W42, causation, and damages. Moreover, Defendant does not object to the addition of Navistar or WCC. (*See generally* Doc. 17.)

In their Motion for Leave to File Amended Complaint, Plaintiffs argue that their claims against Navistar and WCC are timely, as they would properly relate back under Rule 15(c). Relation back under Rule 15(c) addresses only whether an amended complaint will relate back to the filing of the original complaint and not whether amendment is proper. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 202–03 (3d Cir. 2006) ("Leave to amend under subsection (a) and relation back under subsection (c), while obviously related, are conceptually distinct."). A claim may be futile under Rule 15(a) because it is untimely, making amendment inappropriate. Because, however, "[a] statute of limitations bar is an affirmative defense," Plaintiffs are "not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (alteration and internal quotation marks omitted). Thus, to the extent Plaintiffs seek leave to amend their Complaint to add Navistar and WCC, their Motion is **GRANTED**.

## II. WMW

In opposition to Plaintiffs' Motion for Leave to File Amended Complaint, Defendant submitted the declaration of Workhorse Motor Works, Inc.'s (WMW) Chief Executive Officer Duane Hughes. (Doc. 17-1.) Hughes represents that WMW is an Indiana corporation with its principal place of business in Loveland, Ohio and a manufacturing facility in Union City, Indiana. (*Id.* ¶ 2.) WMW has no physical presence in Georgia, such as offices, facilities, property, employees, or agents. (*Id.* ¶¶ 3–4.) Nor has it ever been licensed, authorized, or registered to do business in Georgia. (*Id.* ¶ 3.) Similar to Willison, Hughes

11

claims that WMW did not manufacture the W42, but rather WCC manufactured the truck in 2010 in Union City, Indiana. (*Id.* ¶ 5.) Hughes further represents that when WMW purchased WCC's assets pursuant to the Asset Purchase Agreement, it did not assume any liabilities related to the W42. (*Id.* ¶¶ 7–8.) Finally, he states that WMW only manufactures electric-powered medium duty trucks in Indiana and that it does not sell, distribute, or deliver any products in Georgia. (*Id.* ¶ 11.)

### III.   Personal Jurisdiction

Defendant first argues that Plaintiffs' claims against it and proposed defendant WMW are futile because the Court does not have personal jurisdiction over either party. (Doc. 17 at 1, 5.) Accordingly, the Court engages in the same three-step burden shifting process, asking first whether Plaintiffs allege sufficient facts in their proposed Amended Complaint to set forth a prima facie case of jurisdiction under the Georgia long-arm statute. *Mazer*, 556 F.3d at 1274.

#### A.   Georgia's Long-Arm Statute

In their proposed Amended Complaint, Plaintiffs assert that the Court has jurisdiction over Defendant and WMW under subsections one through three of Georgia's long-arm statute. (*See* Doc. 11-2 ¶ 28.) Under subsection one, a court may exercise personal jurisdiction over any defendant who "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1). As explained above, a defendant transacts any business within this state where it "has purposefully done some act or consummated some transaction in Georgia." *Diamond Crystal*, 593 F.3d at 1260 (alteration omitted) (quoting *Aero Toy Store*, 631 S.E.2d at 737). Because a defendant "need not physically enter the state" to transact business, the Court may consider the defendant's "tangible and intangible conduct," occurring inside and outside the state. *Id.* at 1264.

Here, Plaintiffs allege sufficient facts to set forth a prima facie case of jurisdiction under subsection one of Georgia's long-arm statute. Plaintiffs allege that Defendant and WMW designed, manufactured, assembled, inspected, marketed, distributed, and sold the subject Workhorse W42 truck and continue to do so after the purchase of WCC. (Doc. 11-2 ¶¶ 22, 31(e).) Defendant and WMW allegedly negotiate the purchase, sale, and delivery of truck fleets with UPS employees, officers, and agents in Georgia. (*Id.* ¶ 31(g)–(j).)

Furthermore, Defendant and WMW allegedly warrant and service UPS trucks sold in Georgia in addition to using third-party vendors for distributing and servicing fleet trucks and truck parts. (*Id.* ¶ 31(k), (m)–(p).) Thus, Plaintiffs allege sufficient facts showing that Defendant and WMW purposefully consummated transactions in Georgia by negotiating, selling, and delivering fleet trucks to Georgia. Accordingly, the burden now shifts to Defendant to show that jurisdiction is lacking. *See Louis Vuitton*, 736 F.3d at 1350.

Defendant provides the declarations of its Chief Operating Officer Robert Willison and WMW's Chief Executive Officer Duane Hughes. (Docs. 7-1, 17-1.) In his declaration, Willison represents that Defendant is a Nevada corporation with its principal place of business in Loveland, Ohio and a manufacturing facility in Union City, Indiana. (Doc. 17-1 ¶ 2.) Defendant does not have any physical presence in Georgia, such as offices, facilities, property, employees, or agents. (*Id.* ¶ 3.) It also is not and has never been licensed, authorized, or registered to do business in Georgia. (*Id.*) Willison further states that Defendant does not and has never manufactured the W42 or diesel trucks like the W42. (*Id.* ¶¶ 4, 10(a).) Rather, Defendant manufactures electric, medium duty trucks. (*Id.* ¶ 10.) All of Defendant's trucks are manufactured and delivered in Indiana, and Defendant does not sell, distribute, or deliver any products in Georgia. (*Id.* ¶ 11.)

In his declaration, Hughes largely echoes Willison's representations, asserting that, like Defendant, WMW has no physical presence in Georgia and has never been licensed, authorized, or registered to do business there. (Doc. 17-1 ¶ 3.) Hughes also states that WMW did not manufacture the W42 and that it only manufactures electric-powered medium duty trucks in Indiana. (*Id.* ¶¶ 4, 10(a), 11.) Because Defendant's declarations contradict Plaintiffs' allegations, the burden shifts back to Plaintiffs to produce evidence supporting jurisdiction. *Meier*, 288 F.3d at 1269.

Construing all reasonable inferences in Plaintiffs' favor, Plaintiffs allege sufficient facts to support their assertion that Defendant and WMW purposefully transacted business within Georgia. Plaintiffs submitted several years of Defendant and WMW's SEC filings. (*See* Docs. 10-3 to 10-11.) According to their 2018 SEC filing, Defendant and WMW entered into a Vehicle Purchase Agreement with UPS—a Delaware corporation with its principal place of business in Atlanta, Georgia—on June 4, 2014, under which they sell fleet trucks to

13

UPS. (Doc. 10-1 at 1; Doc. 10-2 at 1; Doc. 10-6 at 15.) Pursuant to the purchase agreement, Defendant and WMW fulfilled six separate orders, totaling over 1,400 vehicles, with the most recent order being completed in early 2018. (Doc. 10-6 at 15.) While the filings do not indicate where the vehicles were delivered, at least one order required Defendant and WMW to send two trucks to UPS in Georgia, which were immediately put into use in Roswell, Georgia. (*See* Doc. 10-3 at 7.) Defendant and WMW's negotiations with UPS, whose principal place of business is in Georgia, and actual delivery of trucks to Georgia is sufficient to demonstrate they purposefully consummated some transaction within the state. *See Diamond Crystal*, 593 F.3d at 1265 n.18. Thus, based on the allegations in the Amended Complaint, the Court has personal jurisdiction over Defendant and WMW under subsection one of Georgia's long-arm statute, unless the exercise of that jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *Mazer*, 556 F.3d at 1274.

### B. Due Process Clause

"The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." *Diamond Crystal*, 593 F.3d at 1267. Because the "heart of this protection is fair warning," the "Due Process Clause requires that the defendant's conduct and connection with the forum State be such that [it] should reasonably anticipate being haled into court there." *Id.* (alteration and internal quotation marks omitted). "The courts recognize two types of jurisdiction that are consistent with the Due Process Clause: 'general or all-purpose jurisdiction, and specific or case-linked jurisdiction.'" *Collett v. Olympus Med. Sys. Corp.*, 437 F. Supp. 3d 1272, 1279 (M.D. Ga. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). Here, Plaintiffs rely on specific jurisdiction. (*See* Doc. 10 at 10.)

To determine whether the Court's exercise of specific jurisdiction would violate due process, the Court applies a three-part test:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3)

14

> whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355. "The plaintiff[s] bear[ ] the burden of establishing the first two prongs . . . ." *Id.* "If the plaintiffs carry their burden," the Court "next consider[s] whether the defendant has made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (internal quotation marks omitted), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019). Plaintiffs' claims fail on the first prong.

Under the first prong, Plaintiffs must demonstrate that their claims against Defendant and WMW "arise out of or relate to" at least one of Defendant or WMW's contacts with the forum. *Id.* A "tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort. *Id.* at 1314 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)). However, "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "In the absence of such a connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Waite*, 901 F.3d at 1314.

Here, Plaintiffs fail to present evidence showing Defendant or WMW's conduct in Georgia is the "but-for" cause of their injuries. Plaintiffs' claims arise out of the allegedly faulty design and manufacture of the 2010 Workhorse W42. (Doc. 11-2 ¶ 22.) Defendant and WMW produced evidence that WCC designed, manufactured, sold, or delivered the 2010 Workhorse W42—not them. Plaintiffs present no contradictory evidence and, instead, assert that Defendant and WMW continue to manufacture and sale the W42 to Georgia-based UPS. Even accepting this as true, any W42 manufactured or sold by Defendant or WMW would be a 2013 or later model and not the allegedly defective 2010 W42 model at issue here, as WMW did not purchase WCC's assets until 2013 and did not assume any liabilities related to the W42. Because none of Defendant or WMW's conduct in Georgia is the but-for cause of Plaintiffs' injuries, the Court cannot exercise specific jurisdiction over Defendant or WMW, and Plaintiffs' proposed claims against them are futile.

15

In both their Complaint and proposed Amended Complaint, Plaintiffs allege that the Court may exercise personal jurisdiction over Defendants because they "engaged in such regular, continuous, and systematic business in the State of Georgia that Defendants may fairly be regarded as 'at home' in Georgia." (Doc. 1 at 16 ¶ 17; Doc. 11-2 ¶ 29.) In response to Defendant's Motion to Dismiss, however, Plaintiffs only argued that the Court could exercise specific jurisdiction—not general jurisdiction over Defendant. (Doc. 10 at 10.) Thus, Plaintiffs only appear to assert specific jurisdiction.

To the extent Plaintiffs argue that the Court can exercise general jurisdiction over Defendants, the Court disagrees. For a court to "assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process," the corporations' "affiliations with the State [must be] so continuous and systematic as to render them essentially at home in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019). "[O]nly a limited set of affiliations with a forum will render a defendant at home there. The paradigm all-purpose forums in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Id.* (internal quotation marks omitted). "Outside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an exceptional case." *Id.* (internal quotation marks omitted). Here, Plaintiffs have failed to allege sufficient facts demonstrating that Defendant or WMW's operations in Georgia are so substantial for either to be considered essentially at home there. Accordingly, to the extent Plaintiffs seek to amend their Complaint to assert claims against Defendant and WMW, the Motion is **DENIED**.[2]

## IV. Jurisdictional Discovery

In their Response Brief to Defendant's Motion for Summary Judgment, Plaintiffs request that, as an alternative to granting Defendant's Motion to Dismiss, the Court should permit the Parties to engage in jurisdictional discovery. (Doc. 10 at 1–6.) Plaintiffs seek discovery regarding whether Defendant and WMW sell trucks within Georgia, certify their

---

[2]   Because the Court finds that it is without personal jurisdiction over Defendant and WMW, it does not reach Defendant's alternative arguments for dismissal.

trucks as compliant with Georgia law, assumed liability for the W42 sold to UPS, and continue to service the W42 after 2013. (*Id.*) While a plaintiff generally "should be given the opportunity to discover facts that would support his allegations of jurisdiction," *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984), "a district court does not abuse its discretion in dismissing the plaintiff's action for lack of personal jurisdiction, even before jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so." *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 830 (11th Cir. 2012) (citing *Mazer*, 556 F.3d at 1280–81). In *Mazer*, the Eleventh Circuit found that the district court did not abuse its discretion in denying jurisdictional discovery where the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing" its complaint. 556 F.3d 1280–81. The Eleventh Circuit further explained that, despite recognizing the need for jurisdictional discovery, the plaintiff acted unreasonably by failing to take any affirmative steps to seek discovery during the four months the motion to dismiss were pending. *Id.* at 1281.

Hence, like the plaintiff in *Mazer*, Plaintiffs never moved for jurisdictional discovery but rather sought it as an alternative to dismissal. (*See* Doc. 10 at 1–5.) While Defendant's Motion to Dismiss was pending, Plaintiffs moved to stay discovery and for leave to file an amended complaint, adding additional parties. Nowhere in either motion did Plaintiffs address jurisdictional discovery, much less request an exception to the discovery stay for it. Plaintiffs, therefore, have not taken any "reasonable steps" to warrant jurisdictional discovery. *Mazer*, 556 F.3d at 1281. Accordingly, Plaintiffs' request for jurisdictional discovery is **DENIED**.

## CONCLUSION

For the reasons provided above, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED**, and Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 11) is **GRANTED in part and DENIED in part**. Accordingly, Plaintiffs' Complaint (Doc. 1) is **DISMISSED**, but Plaintiffs are given leave to file an amended complaint in accordance with this Order within **twenty-one (21) days** of this Order.

**SO ORDERED**, this 30th day of September, 2020.

<u>/s/ Leslie A. Gardner</u>
**LESLIE A. GARDNER, JUDGE
UNITED STATES DISTRICT COURT**